IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | * CIVIL NO. |
| $54,668.00 in U.S. Currency | * |
| Defendant *In Rem*. | * |

******

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by its attorneys, Erek L. Barron, United States Attorney for the District of Maryland, and Steven T. Brantley, Assistant United States Attorney, brings this verified complaint for forfeiture in a civil action *in rem* and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

Nature of the Action

1.  This is a civil forfeiture action *in rem* against $54,668.00 U.S. Currency (Asset ID 22-DEA-690445) that constitutes proceeds traceable to an exchange of controlled substances or moneys used to facilitate a violation of 21 U.S.C. § 841, and therefore should be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

The Defendant *In Rem*

2.  The Defendant Property consists of: $54,668.00 U.S. Currency (Asset ID 22-DEA-690445).

3.  The Defendant Property is presently in the custody of the United States Drug Enforcement Agency (DEA) in the State of Maryland.

4. The United States brings this action *in rem* in its own right to forfeit all right, title and interest in the Defendant Property.

5. This forfeiture is based on, but not limited to, the evidence outlined in the attached Declaration of DEA Task Force Officer James L. Vermont, which is incorporated herein by reference.

## Jurisdiction and Venue

6. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. § 881.

7. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 because the Defendant Property is located in this district.

## Legal Basis for Forfeiture

9. The Defendant Property is subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) and (11) because it constitutes: (i) moneys furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (ii) proceeds traceable to such an exchange; or (iii) moneys used or intended to be used to facilitate a violation of the Controlled Substances Act.

**WHEREFORE**, Plaintiff, the United States of America, prays that all persons who reasonably appear to be potential claimants with interests in the Defendant Property be cited to appear herein and answer the Complaint; that the Defendant Property be forfeited and condemned to the United States of America; that upon Final Decree of Forfeiture, the United States dispose of the Defendant Property according to law; and that the plaintiff receive such other and further relief as this Court deems proper and just.

Respectfully submitted,

Erek L. Barron
United States Attorney


_____/s/_____
Steven T. Brantley
Assistant United States Attorney

## **VERIFICATION**

I, James L. Vermont, a Task Force Officer with the U.S. Drug Enforcement Administration, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based on reports and information known to me and/or furnished to me by other law enforcement agents and that everything contained therein is trued and correct to the best of my knowledge and belief.

Date: 05/23/2023

James L. Vermont
Task Force Officer
U.S. Drug Enforcement Administration

## **DECLARATION**

I, James Vermont, Task Force Officer (TFO) with the U.S. Drug Enforcement Administration, do hereby declare:

Introduction and Agent Background

1. I am deputized as a TFO with the DEA, and thus an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I have been a member of the Baltimore County Police Department ("BCPD") since February 2005. Upon joining the BCPD, I worked as a police cadet for the Central Records Division. I was then assigned as a patrol officer at the Woodlawn Precinct from December 2006 to August 2009. I was then assigned to the Community Action Team (C.A.T) at Woodlawn Precinct from August 2009 to July 2011. I was assigned to the Central Drug Unit as an undercover detective from July 2011 to February 2013. I was assigned to the Vice/Narcotics Pharmaceutical Diversion Team from February 2013 to July 2018. Since July 2018, I have been assigned to the DEA Tactical Diversion Squad Group 50 in Baltimore, Maryland as a Task Force Officer.

3. I have successfully completed a twenty-six-week entrance level training course in which I received training in criminal investigations while attending the Baltimore County Police Academy. I also attended a forty-hour introduction course to drug identification during the academy. I have completed numerous schools and seminars dealing with Search and Seizure, Criminal Investigations, Drug Interdiction, Prescription Fraud and Diversion, Indoor Cannabis Grow, Multijurisdictional Counterdrug Task Force Training, Auto Theft Investigations and Money Laundering.

4.      I have conducted many probable cause searches and prepared and executed numerous search and seizure warrants for narcotics, which have resulted in arrests and convictions. I have on numerous occasions seized quantities of Controlled Dangerous Substances ("CDS") which were chemically analyzed and used as evidence in prosecutions.

5.      I have coordinated and assisted with numerous controlled purchases of CDS through the use of informants and undercover detectives. I have also conducted numerous hand-to-hand transactions for Controlled Dangerous Substances. I have conducted many interviews with arrestees and informants and have familiarized myself with terminology used by violators on the street and prices for CDS. During my career, I have been involved in numerous investigations pertaining to the diversion of pharmaceutical drugs, ranging from street-level operations to doctors, pharmacists and illicit drug-trafficking organizations. I have participated in and authored affidavits for several Title-III investigations.

## Purpose of this Declaration

6.      This declaration is submitted in support of a complaint for forfeiture *in rem* against U.S. currency in the amount of $54,668.00 (Asset ID 22-DEA-690445) (the "Defendant Property") seized from Kenneth Wills during the execution of a search and seizure warrant on a residence in Pasadena, Maryland. This declaration is submitted solely to show sufficient facts in support of seizure of the Defendant Property, and does not contain all facts known by myself or other law enforcement officers about this investigation.

7.      I submit that there are sufficient facts to support a reasonable belief that the Defendant Property constitutes (1) money, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money, negotiable

instruments, or securities used or intended to be used to facilitate a violation of the Controlled Substances Act in violation of 21 U.S.C. § 841 and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## Factual Summary

8. The DEA and the Department of Health and Human Services – Office of Inspector General ("HHS-OIG") have been investigating a suspected "Pill Mill" clinic in South Baltimore (the "South Baltimore Clinic"), as well as employees of the clinic and drug trafficking organizations who use the clinic to illegally obtain and distribute oxycodone and other CDS tablets. Further, the DEA and HHS-OIG have investigated the extent to which healthcare benefit programs unwittingly have paid for costs associated with, for example, the prescriptions for these substances written without medical necessity or outside the usual course of professional practice. As a part of this, investigators have spoken with confidential sources and sources of information and conducted physical and electronic surveillance of those involved, in addition to other investigative activities.

9. As a result of these efforts, investigators identified Michael Anthony Zimmerman Jr., who investigators believe obtained CDS himself from the South Baltimore Clinic as well as from "pseudo patients" who obtained CDS from other suspected pill mill clinics in Maryland. A "pseudo patient" is one who presents at a physician's office – often a suspected pill mill – complaining of pain or other ailments only in an effort to obtain a prescription for oxycodone or another CDS. The pseudo patient then usually sells many of those oxycodone and other CDS tablets for a profit to other individuals involved in the illicit trafficking of CDS and other narcotics.

10. During the course of this investigation, investigators uncovered information that Wills served as a pseudo patient for Zimmerman, obtaining prescriptions for oxycodone pills and then selling most of those to Zimmerman for cash.

11. Maryland Prescription Drug Monitoring Program ("PDMP")[1] data indicates that from January 2017 to March 2021, Wills obtained 5,920 oxycodone 30mg tablets, and from April 2021 to March 2022, Wills obtained 1,260 oxycodone 20mg tablets, all of which Wills filled using his commercial insurance. Based on my training, knowledge and experience, the street value of oxycodone is typically $1 per milligram. Therefore, the oxycodone tablets that Wills acquired had a street value of approximately $202,800. Based on the investigation, investigators believe that Wills sold most of the oxycodone pills he obtained to Zimmerman.

12. For example, PDMP records indicate that Wills filled an oxycodone prescription on June 22, 2021. Using physical and electronic surveillance, and other investigative means, investigators believe Wills sold Zimmerman many of the oxycodone tablets he received on June 22, 2021. After observing a suspected narcotics transaction between Wills and Zimmerman on June 24, 2021, investigators observed conversations between Wills and Zimmerman discussing how Zimmerman had not paid Wills enough for the pills and agreeing on the correct price. The following day, investigators observed the two briefly meet in the parking lot of Wills' employer. Investigators believe the purpose of this meeting was for Zimmerman to give Wills the remainder of the money owed for the prior days pill transaction.

13. PDMP records indicate Wills also filled a prescription for 120 oxycodone 20mg on July 20, 2021. The next day, July 21, 2021, investigators observed Wills meet with Zimmerman and

---

[1] The Maryland PDMP collects and securely stores information on drugs that contain controlled substances and are dispensed to patients in Maryland. Drug dispensers, including pharmacies and healthcare practitioners, electronically report the information that is stored in the PDMP database.

conduct what appeared to be a brief transaction. Surveillance then followed Wills, who most likely had the cash proceeds from this narcotics transaction to his residence in Pasadena, Maryland.

14.     Based on this information and other observations during this investigation, DEA and HHS-OIG obtained a search and seizure warrant for Wills' residence located in Pasadena, Maryland, which was executed on April 7, 2022. At that time, Wills was home along with another adult relative in the residence. Investigators read Wills and his adult relative their Miranda rights. Both verbally acknowledged that they understood their rights. Investigators asked each person if there were any drugs, guns, or large amounts of currency in the house. Wills stated that there were drugs, approximately $50,000 to $60,000 in cash, a fake Rolex, and jewelry in his bedroom. Wills showed investigators the location of the drugs and the cash which were in the closet inside the safe in the master bedroom. Investigators took photos of the residence and began an orderly search.

15.     Found within the safe in the right corner of the closet in the master bedroom was the Defendant Property, that is $54,668.00 in U.S currency. Wills stated that the cash was from a friend of his who he helps with projects on the side. The money was wrapped in rubber bands, which based on my knowledge and experience, is typical of drug proceeds. Found in the left corner of the same closet was a plastic bag containing glass vials of a clear liquid believed to be steroids and drug paraphernalia for steroid injections. Found in the third drawer of the dresser in the closet were two prescription bottles in the name of Kenneth Wills. One prescription bottle contained suspected tablets of oxycodone 20mg as well as one Xtampza 27mg tablet[2]. The other prescription bottle contained suspected oxycodone residue. Found on a cushion on the floor in

---

[2] Xtampza is a opioid CDS, similar to oxycodone.

the back living room area was an iPhone 11 Pro Max that Wills identified as his phone. Wills signed a consent search form for this device and provided investigators with the passcode and a charger.

16. During the course of the search warrant, Wills stated that he receives a prescription for oxycodone from a doctor, that he is addicted to oxycodone, and Wills admitted that he sells some of his oxycodone. He also stated that he will purchase extra oxycodone pills from an unknown male in the city or from other individuals on his way to work. Wills stated that he buys these extra oxycodone 10mg pills for $9-10 a pill.

17. The DEA seized the U.S currency as proceeds of illegal distribution of oxycodone and other prescription medications.

18. Investigators conducted a criminal history check on Wills and his adult relative that revealed no criminal convictions. A wage check was also run for each individual. The most recent reported wages for Wills were from 2019, and during that year Wills made $61,091. No wages were reported for Wills from 2020 or 2021.[3] The wage check for his adult relative revealed they made $67,362.73 in 2021, as well as a total of $56,983.38 in the first half of 2022. As Wills admitted to selling drugs, claimed that the $54,668.00 U.S. currency (Asset ID 22-DEA-690445) was his, the money was packaged in the typical manner for drug proceeds, Wills did not have any recorded wages for two years prior to the search, and other evidence uncovered during this investigation and referenced in this declaration, I submit that the Defendant Property is drug proceeds and subject to forfeiture.

---

[3] On a number of occasions during the course of this investigation, investigators did observe Wills at a location in Baltimore where he appeared to be working. However, notwithstanding these observations, the wage check by investigators reported no wages for Wills during 2020 or 2021.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 U.S.C. SECTION 1746 THAT THE FACTS SUBMITTED BY THE DRUG ENFORCEMENT ADMINISTRATION IN REFERENCE TO THE SEIZURE OF UNITED STATES CURRENCY IN THE AMOUNT OF $54,668.00 FROM KENNETH WILLS ARE ACCURATE, TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Executed this 23 day of May, 2023

James L. Vermont
Task Force Officer
Drug Enforcement Administration